■ In the Matter of RICHARD E., a Person Alleged to be Mentally Retarded, Respondent, JOSEPH J. COLARUSSO, as Director of Sunmount Developmental Disabilities Services Office, Appellant. [785 NYS2d 580]—

Kane, J. Appeal from an order of the Supreme Court (Feldstein, J.), entered July 2, 2004 in Franklin County, which, in a proceeding pursuant to Mental Hygiene Law article 15, granted respondent's motion to dismiss the petition at the close of petitioner's case.

Respondent was admitted to Sunmount Developmental Disabilities Services Office as a condition of being released from prison on parole. When the terms of his parole expired, he voluntarily remained at Sunmount until May 2004, at which time he gave written notice that he intended to leave. Petitioner filed an application, pursuant to Mental Hygiene Law § 15.13 (b), seeking to involuntary retain respondent, alleging that respondent was mentally retarded and needed continued treatment. Respondent requested a hearing but waived the requirement that it occur within five days and instead requested that it be completed within the month. At the hearing, the parties stipulated to bifurcate the issues so that Supreme Court would hear the issue of whether respondent was mentally retarded before proceeding to the issue of respondent's alleged dangerousness. At the close of petitioner's proof on the first issue, respondent moved to dismiss the application. Supreme Court granted the motion, prompting petitioner's appeal.

Petitioner first contends that Supreme Court erred in denying his motion to adjourn the hearing and direct respondent to submit to an examination by Michael Small, the nontreating psychologist whom petitioner selected to testify. We disagree. The day after respondent gave notice of his intent to leave Sunmount, he submitted to an examination by Howard Ziegler and Madelon Flickstein, a physician and psychologist of petitioner's choosing. Each of those professionals completed certifications submitted with petitioner's application for respondent's retention, pursuant to 14 NYCRR 15.7. Respondent's counsel was notified and was present when that examination was conducted (*see Ughetto v Acrish,* 130 AD2d 12, 21-25 [1987], *appeal dismissed* 70 NY2d 871 [1987]). Three weeks after petitioner filed his application, and five days before the hearing, petitioner informed respondent and his counsel that Small would be testifying instead of Ziegler or Flickstein—the

latter being respondent's treating psychologist—and that Small would be interviewing respondent the day before the hearing. Respondent's counsel refused to permit that interview. While petitioner is correct that there is no authority requiring him to call respondent's treating psychologist to testify at the retention hearing, neither is there authority for his proposition that he can require respondent to be subjected to a prehearing interview at any time before the hearing (*see e.g.* Mental Hygiene Law art 15; *Ughetto v Acrish, supra*). Here, petitioner waited until the eve of the hearing before seeking another interview without providing an adequate explanation for the delay, and respondent's counsel would not have had time to develop any strategy to respond to information revealed in an interview the day before the hearing. Moreover, Flickstein was available to testify but petitioner would not produce her. Considering that respondent's liberty would have been further affected by an adjournment, Supreme Court did not abuse its discretion in denying petitioner's motion.

Supreme Court also did not err in drawing a negative inference against petitioner, akin to a missing witness charge, based on his failure to produce Flickstein's testimony at the hearing. Petitioner offered no explanation for her absence, despite the court's urging that she be produced, and he even stipulated that she was available to testify (*see Matter of Toni D.,* 179 AD2d 910, 912 [1992]). Flickstein was employed at petitioner's facility, was respondent's treating psychologist and had administered an adaptive behavioral test relied on by Small in his testimony. The results of this adaptive behavioral test were at variance from respondent's preincarceration history, as well as his documented conduct at Sunmount, casting their reliability into question. Because Flickstein was under petitioner's control and could provide relevant, noncumulative testimony regarding whether respondent is mentally retarded, the court was permitted to "draw the strongest inference against [petitioner] that the opposing evidence in the record permits" (*Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G.,* 59 NY2d 137, 141 [1983]; *see Douglas v Kingston Income Partners '87,* 2 AD3d 1079, 1082 [2003], *lv denied* 2 NY3d 701 [2004]).

Considering petitioner's failure to produce Flickstein and the negative inference flowing therefrom, Supreme Court properly determined that petitioner failed to meet his burden of proving, by clear and convincing evidence, that respondent was mentally retarded (*see Addington v Texas,* 441 US 418, 425-431 [1979]; *Matter of Francine T.,* 302 AD2d 533, 533 [2003]; *Matter of Scopes,* 59 AD2d 203, 206 [1977]). Such a showing includes

proof that respondent's IQ fell within a range indicating intellectual impairment, his adaptive abilities were impaired and the onset of his retardation was within the developmental period.

Questions were raised regarding Small's opinion that respondent's adaptive abilities supported a diagnosis of mental retardation. As he had no personal knowledge on which to make such a determination, he based this opinion on two adaptive tests. He had never seen the report of the results on one test, but merely saw the results mentioned in someone else's report. The actual report indicated that respondent was initially qualified to receive mental health services based on an estimate of his adaptive skills, but that only an estimate could be provided due to a lack of reliable informants. Based on the inconclusiveness of this report, Small admitted that he would not give it too much weight. The other adaptive behavior test was performed by Flickstein. Small could not verify the source of Flickstein's information for the assessment and was unsure as to what methodology she had used in testing respondent. Cross-examination raised many questions as to the accuracy of the test results as compared to Sunmount's daily and monthly monitoring notes, causing Small to acknowledge that there were discrepancies or possible inaccuracies in the adaptive test results which concerned him. Because Flickstein did not testify and resolve those questions, resulting in Supreme Court's negative inference, the court determined that petitioner's proof regarding respondent's adaptive skills did not clearly and convincingly show that he was mentally retarded. Accordingly, the court properly granted respondent's motion dismissing the application at the close of petitioner's proof.

Peters, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.