■ In the Matter of SIDNEY JJ., Respondent. DIANE CARDIFF, as Director of Valley Ridge Center for Intensive Treatment, Appellant. [818 NYS2d 324]—

Lahtinen, J. Appeal from a judgment of the Supreme Court (Dowd, J.), entered December 8, 2005 in Chenango County, which dismissed petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 15, for the involuntary retention of respondent.

Respondent was sentenced to a prison term of 1⅓ to 4 years

after pleading guilty in 1999 to attempted sexual abuse in the first degree based upon his criminal conduct involving an 11-year-old girl. In May 2002, he voluntarily entered Valley Ridge Center for Intensive Treatment (hereinafter VRCIT) as a condition of being released on parole. He sought release from VRCIT when his parole expired and, following a hearing in March 2003, Supreme Court ordered that he be retained for 60 days. Retention orders were thereafter executed by Supreme Court in May 2003 and June 2004 based upon an agreement between the parties and the court's determination that VRCIT had established the elements necessary for involuntary retention, including that respondent was mentally retarded and posed a substantial threat of physical harm to himself or others. With the June 2004 order set to expire, petitioner filed an application in November 2005 seeking to involuntarily retain respondent for two years. Following a hearing, Supreme Court concluded that petitioner failed to meet the burden of showing by clear and convincing evidence that retention was required. The court thus dismissed the petition and directed that respondent be released to return to his family in Texas. Petitioner appealed, invoking an automatic stay of Supreme Court's judgment (*see* CPLR 5519 [a] [1]).

To involuntarily retain a mentally retarded person as a resident at a facility such as VRCIT, the petitioning agency is required to establish that the person is in need of in-patient care and treatment, such care and treatment is essential to the person's welfare, and the person's judgment is so impaired that he or she is unable to understand the need for care and treatment (*see* Mental Hygiene Law §§ 15.01, 15.03). Included within such proof must be the constitutionally required showing that the person poses a substantial threat of physical harm to self or others (*see generally Matter of Bethune M.*, 12 AD3d 605, 606 [2004]; *Matter of Seltzer v Hogue*, 187 AD2d 230, 237 [1993]; *Matter of Scopes*, 59 AD2d 203, 205 [1977]). A civil commitment of this nature is a significant deprivation of liberty and must be supported by clear and convincing evidence (*see Addington v Texas*, 441 US 418, 425 [1979]; *People ex rel. Thorpe v Von Holden*, 63 NY2d 546, 555 [1984]; *Matter of Seltzer v Hogue, supra* at 237). While our review power is broad (*see Matter of Luis A.*, 13 AD3d 441, 442 [2004]), we generally defer to factual determinations of the trial court since it observed the witnesses (*see Matter of Joseph O.*, 245 AD2d 856, 857-858 [1997]; *see also Matter of George L.*, 85 NY2d 295, 305 [1995]).

Here, the only witness who testified at the hearing was Alfred Barnes, a psychologist employed at VRCIT. Barnes stated that

respondent had engaged in certain "target behaviors" or offensive conduct while at VRCIT and that any one of these acts outside the facility could lead to incarceration. On cross-examination, however, it was revealed that these behaviors encompassed a broad array of activities, including such things as teasing and swearing, which are hardly criminal in nature. Barnes also related that respondent was involved in 13 episodes of "inappropriate sexual behavior" in 2005. But, the definition of acts that fell within this category was markedly expansive. For example, "profanity" and "verbal gesture" were included and Barnes agreed that "giving the finger" or telling a "dirty joke" would fall within this category. When pressed for details of incidents involving respondent, the most lurid one he related involved a time where respondent's buttocks were exposed to a staff member as he exited a shower. No evidence was presented that respondent engaged in any sexual activity or assaulted another resident while housed at VRCIT. Barnes's familiarity with respondent was somewhat suspect in that, although respondent had been on Barnes's caseload "for a time," he currently supervises the psychologist who manages respondent's case and questioning at the hearing often revealed an inability to set forth details to support broad statements. Cross-examination also revealed that respondent had made considerable progress in dealing with negative "target behaviors" through a series of positive "replacement behaviors," resulting in improved social skills, anger management and empathy skills. Petitioner relies heavily upon the fact that no expert testimony was presented to contradict Barnes. However, effective cross-examination of Barnes revealed weaknesses in petitioner's proof, elicited testimony favorable to respondent and supported Supreme Court's conclusion that Barnes's opinions did not provide the requisite clear and convincing evidence to permit involuntary retention of respondent (*compare Matter of Lamont D.*, 9 AD3d 630, 631 [2004], *lv denied* 3 NY3d 609 [2004]).

Cardona, P.J., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.