## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  March 5, 2015                519783
_____

In the Matter of WILLIAM T.

STEPHANIE DUNHAM, as Acting
    Director of Sunmount
    Developmental Disabilities
    Services Office,                        MEMORANDUM AND ORDER
                Appellant-
                Respondent;

WILLIAM T.,
                Respondent-
                Appellant.

_____

Calendar Date:  January 15, 2015

Before:  Lahtinen, J.P., Garry, Devine and Clark, JJ.

_____

    Eric T. Schneiderman, Attorney General, Albany (Zainab A. Chaudhry of counsel), for appellant-respondent.

    Sheila E. Shea, Mental Hygiene Legal Service, Albany (Jeanne N. Cox of counsel), for respondent-appellant.

_____

Devine, J.

    Cross appeals from an order of the Supreme Court (Feldstein, J.), entered July 8, 2014 in Franklin County, which dismissed petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 15, for the involuntary retention of respondent.

    Respondent, who was born in 1966, has been diagnosed with and treated for bipolar disorder, pedophilia and exhibitionism,

among other mental conditions.  Respondent has an extensive criminal record that started when he was no older than 23, including, but not limited to, convictions for public lewdness, harassment, disorderly conduct and endangering the welfare of a child.  Notably, many of his criminal offenses were of a sexual nature and involved young female victims.  Since 1998, respondent had resided in a sexual support unit of Taconic Developmental Disabilities Services Office (hereinafter Taconic DDSO) as a condition of his probation, which respondent completed in 2001.  While a resident at Taconic DDSO, respondent continued to commit sexual offenses and was classified as a risk level II sex offender under the Sex Offender Registration Act (see Correction Law art 6-C) and was transferred from Taconic DDSO to Sunmount Developmental Disabilities Services Office (hereinafter Sunmount DDSO) in 2012 as a condition of his term of probation, which was set to expire in June 2013.  Respondent voluntarily remained at Sunmount DDSO after his probation concluded, but attempted to sign out of the facility in March 2014.  Petitioner filed this application to involuntarily retain respondent for a 60-day period and, following a hearing, Supreme Court dismissed the petition.  These cross appeals ensued.

Petitioner challenges Supreme Court's determination that she failed to demonstrate, by the proffer of clear and convincing evidence, that respondent's developmental disability is attributable to an intellectual disability that was manifested during the developmental period.  Pursuant to Mental Hygiene Law article 15, when a facility seeks to retain an individual against his or her will, such retention may occur when the person has an alleged developmental disability that, as is relevant here, can be attributed to mental retardation that originated before he or she turned 22 years of age, has existed on a continuous basis and has severely limited his or her ability to function in society (see Mental Hygiene Law §§ 1.03 [22]; 15.01, 15.27 [a]).  Further, the individual will be subject to involuntary care and treatment if it is "essential to his [or her] welfare, and . . . his [or her] judgment is so impaired that he [or she] is unable to understand the need for such care and treatment" (Mental Hygiene Law § 15.01; see Matter of Robert OO., 57 AD3d 1304, 1305 [2008]; Matter of Daniel XX., 53 AD3d 819, 820 [2008]).  Our authority to review factual findings made in

retention cases of this nature is as broad as that of the trial court (see Matter of Sidney JJ., 30 AD3d 959, 960 [2006]) and "we may make our own findings of fact if 'no fair interpretation of the evidence . . . can support the [court's] determination'" (Matter of Luis A., 13 AD3d 441, 442 [2004], quoting Matter of Seltzer v Hogue, 187 AD2d 230, 237 [1993]).

Despite its determination that there was clear and convincing proof to demonstrate that respondent is currently intellectually disabled, Supreme Court ultimately concluded that petitioner failed to present sufficient evidence that such disability occurred during the developmental period and that this longstanding disability was causally related to respondent's purported adaptive deficits. On that basis, Supreme Court determined that it was necessary to dismiss the petition.

Petitioner's chief psychologist, Suzanne Fraser, testified that respondent's developmental disability involved his inability to control his urges to engage in pedophilic and exhibitionist activities – which included several instances of respondent exposing his genitalia to young females or masturbating in public – as well as assaultive conduct toward others and, furthermore, that such disability is attributable to a lifelong intellectual disability. Fraser indicated that documentation of clinical assessments of respondent's adaptive abilities during his formative years is limited, due primarily to the fact that a diagnosis of intellectual disability under the professional diagnostic criteria utilized at that particular time in respondent's life did not include adaptive assessments, but, rather, were limited to the results of IQ tests. Nonetheless, IQ tests conducted during respondent's developmental period revealed that he had "a defective to borderline range of intelligence" and respondent's records further demonstrated that he received various assistive educational services as a child to help him correct his adaptive functioning deficits. Fraser averred that, within a reasonable degree of medical certainty, respondent currently suffers from an intellectual disability that emerged before he reached age 22 and that such disability renders respondent unable to resist committing sexual offenses. Further, the record is replete with evidence regarding respondent's adaptive deficiencies, including his ongoing need to be

redirected by staff members during conflicts with others or when faced with things that trigger his sexually inappropriate conduct, such as television commercials featuring children. Additionally, respondent's records show that he regularly requires assistance with everyday tasks, including bathing, receiving proper nourishment and taking medications.

Although Fraser acknowledged that when, as here, a child comes from an abusive home or is experiencing emotional difficulties, it can be difficult to determine whether such individual has an intellectual disability, she did not waver from her conclusion that respondent was indeed intellectually disabled and had limited adaptive abilities before becoming an adult and, further, that this lifelong intellectual disability is what causes him to, among other things, engage in inappropriate sexual behaviors. In addition, while Fraser conceded during cross-examination that respondent's records indicated that certain mental health professionals might have questioned the extent of respondent's deficits, respondent failed to present such witnesses to testify at the hearing or otherwise proffer competent evidence that controverts petitioner's clear and convincing evidence that respondent has had a lifetime intellectual disability that requires his continued involuntary retention (see Matter of William S., 74 AD3d 1684, 1685 [2010]; compare Matter of Richard E., 12 AD3d 1019, 1022 [2004]).

We have considered respondent's arguments that Supreme Court erred insofar as it determined that petitioner had met her burden in proving the remaining elements of an involuntary retention application of this nature and have found them to be unavailing.

Lahtinen, J.P., Garry and Clark, JJ., concur.

ORDERED that the order is reversed, on the law, without costs, and petition granted.


ENTER:

Robert D. Mayberger
Clerk of the Court